NOT DESIGNATED FOR PUBLICATION

No. 125,765

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DANIEL C. FRAZIER,
*Appellant*,

v.

CITY OF LEROY, KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Coffey District Court; ERIC W. GODDERZ, judge. Submitted without oral argument. Opinion filed February 16, 2024. Affirmed.

*Mark J. Galus* and *Donald R. Aubry*, of The Aubry Law Firm, P.A., of Overland Park, for appellant.

*Ryan K. Meyer* and *Lyndon W. Vix*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, for appellee.

Before BRUNS, P.J., PICKERING, J., and TIMOTHY G. LAHEY, S.J.

PICKERING, J.: The City of LeRoy, Kansas (the City), passed a resolution and order for a citizen to remove a vicious dog from the city limits as a nuisance abatement. The resolution required service of the abatement order to the dog's owners by the Chief of Police, Daniel C. Frazier. He refused to serve the order, claiming it was an unlawful order. The City terminated Frazier's employment for insubordination.

1

Frazier brings this appeal against the City, arguing that the City's decision to terminate his employment as the Chief of Police was arbitrary or capricious, outside the scope of its authority, and unsupported by substantial competent evidence. After reviewing the arguments and record, we find the district court's decision that the City's decision to terminate him was proper. Thus, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

From January 1, 2021, to August 2, 2021, Frazier was employed as the City's police chief. In July 2021, a dog owned by Charlie and Julie Patterson went into another homeowner's yard and attacked their dog. Tre Copeland and Chanda Acklin were the owners of the dog that was attacked. Eddie Skaggs, who saw the dog fight, attempted to subdue the Pattersons' dog and eventually used an electric "cattle prod" to shock the Pattersons' dog and separate the dogs. Because of the Copeland/Acklin dog's injuries sustained in the dog attack, the dog had to be euthanized.

On July 19, 2021, the LeRoy City Council conducted a special meeting, in part, to discuss the incident with the Pattersons' dog. Frazier was present at the special meeting. Both the dog owners and Skaggs provided statements about the dog fight and the Pattersons' dog's history of aggressive behavior. The Pattersons were asked to remove their dog from the city limits, but the Pattersons refused. The city council then adopted Resolution No. 2021-5, which declared that the Pattersons' dog was a nuisance, demanded that the Pattersons remove their dog from the corporate limits of the city, and directed Frazier, as Chief of Police, to serve the order to abate nuisance on the Pattersons. The order gave the Pattersons 10 days to remove the dog or request a hearing before the City's governing body. If the Pattersons failed to do either, the order directed Frazier to have the dog removed from the city and impounded.

After the resolution was passed by the council, the mayor signed the order to abate nuisance and directed Frazier to serve it. Frazier refused to serve the order. He contended that his refusal to serve the order was because he believed it to be unlawful and against his oath as a commissioned law enforcement officer.

On July 26, 2021, in a written notice, the mayor, who serves as the supervisor to the Chief of Police, formally suspended Frazier from his duties as police chief for insubordination. The mayor characterized the insubordination as "evidenced by your refusal to comply with my July 19 directive that you personally serve Charlie and Julie Patterson with the City Council's abatement order to remove their vicious and dangerous dog from the city."

The city council scheduled a pretermination hearing for the next week, on August 2, 2021. Frazier, who earlier had refused to resign, appeared with his attorney. Frazier acknowledged that the mayor had directed him to serve the order to abate nuisance and that he had refused to comply. At the end of the pretermination hearing, the city council unanimously voted to terminate Frazier's employment for insubordination and passed Resolution No. 2021-6. This resolution terminated Frazier's position as Chief of Police.

Frazier filed a notice of appeal with the city clerk. He later petitioned for judicial review under K.S.A. 60-2101(d) on February 1, 2022. His petition claimed that (1) the City exceeded the scope of its authority; (2) the City's decision was not supported by substantial competent evidence; and (3) the City's decision was arbitrary or capricious.

On June 27, 2022, after briefing from both parties, the district court heard arguments. At the end of the hearing, the district court denied Frazier's petition for judicial review. The court found that Frazier lacked standing to challenge whether the order he refused to serve was unlawful; the City had "followed the proper procedure with respect to Frazier's termination;" and "[t]he City's decision to terminate Frazier's

employment was within the scope of its authority, was supported by substantial competent evidence, and was not fraudulent, arbitrary, or capricious." The court also noted that Frazier's termination was "causally connected to his decision to refuse to serve the Pattersons with the Order." The court found: "Frazier had a duty, as the police chief, to serve the Resolution and Order on the Pattersons. Frazier did not have authority to make a determination, on his own, as to the lawfulness of the order."

ANALYSIS

Frazier appeals the district court's denial of his petition for judicial review and renews his arguments challenging his termination. Frazier does not, however, challenge the district court's ruling on standing. To clarify, Frazier's lawsuit is challenging his termination, rather than attempting to invalidate the City's resolution. We believe, moreover, that the district court's ruling on standing does not preclude Frazier from challenging his termination. As such, we assume standing and, focusing on the merits of this appeal, we review Frazier's three arguments regarding the City's termination decision: (1) The City's actions were arbitrary or capricious; (2) the City's actions were outside the scope of its authority; and (3) the city council's order was unsupported by substantial competent evidence. Frazier asserts that he was justified in refusing to carry out an unlawful order and "was therefore not insubordinate."

Frazier sought relief in the district court under K.S.A. 60-2101(d), which allows judgments or final orders made by political or taxing subdivisions, exercising judicial or quasi-judicial functions, to "be reversed, vacated or modified by the district court on appeal." The district court reviews a challenged order to determine whether the political or taxing subdivision's action "was within [its] scope of authority; was substantially supported by the evidence; or was fraudulent, arbitrary, or capricious." *Denning v. Johnson County*, 299 Kan. 1070, 1075, 329 P.3d 440 (2014); see also *Landau v. City Council of Overland Park*, 244 Kan. 257, 273, 767 P.2d 1290 (1989) (noting municipal

4

and county actions specifically excluded from K.S.A. 77-601 et seq., now the Kansas Judicial Review Act).

On appellate review, we apply these same standards de novo without any deference to the district court's decision. *Denning*, 299 Kan. at 1075-76. Thus, we review the City's decision to terminate Frazier as if the appeal had been made directly to us. Our scope of review also is limited "to determining whether the challenged order was within the [City's] scope of authority, was substantially supported by the evidence, or was fraudulent, arbitrary, or capricious." 299 Kan. at 1076.

*The City's conduct was not arbitrary or capricious.*

Frazier first contends that the city council's order was "arbitrary or capricious," and attacks the City's conduct in terminating his employment. In his argument, he does not also assert the alternative, namely that the City acted fraudulently. Thus, we will not consider whether the City acted fraudulently. See *Villa v. Kansas Health Policy Authority*, 296 Kan. 315, Syl. ¶ 8, 291 P.3d 1056 (2013).

The Kansas Supreme Court "'has defined "arbitrary" to mean without adequate determining principles, not done or acting according to reason or judgment; . . . and "capricious" as changing, apparently without regard to any laws.'" *Robinson v. City of Wichita Employees' Retirement Bd. of Trustees*, 291 Kan. 266, 271, 241 P.3d 15 (2010). A decision by a political subdivision "is arbitrary or capricious if it is unreasonable, without foundation in fact, not supported by substantial evidence, or without adequate determining principles." *Denning vs. Johnson County Sheriff's Civil Service Board*, 46 Kan. App. 2d 688, 701, 266 P.3d 557 (2011).

Problematically, in arguing that the decision was arbitrary or capricious, Frazier limits his appeal from his employment termination entirely on whether the City's passage

of Resolution No. 2021-5, directed at the Pattersons, was lawful. Frazier contends that because the City relied on a state statute, K.S.A. 12-1617e, instead of the City's ordinance, its conduct was arbitrary and capricious. He attempts to justify his actions by arguing that the Pattersons' dog was, by definition in the City's code, not a vicious dog. He also argues that there is no provision in the City's code for seizing a nuisance dog. This argument fails to address whether the City's decision to terminate Frazier as its police chief was arbitrary or capricious.

*The City acted within its scope of authority.*

Next, Frazier argues that the City acted outside the scope of its authority when it terminated him because Resolution No. 2021-5 was an unlawful directive. Because the City's resolution and order were illegal, Frazier argues, he thought the directive was "unlawful and unreasonable." He believed that it violated his "oath as a law enforcement officer, the City's ordinances, and the Pattersons' constitutional rights." He seeks to justify his refusal to follow the city council's order and "undercut" the reason for the City's termination of him. He asserts that if the order was unlawful, then his "refusal to follow it would not have been insubordination[.]" Again, Frazier has focused his appeal on whether the City's resolution and order abating the Patterson's nuisance dog was lawful. This argument fails to address whether the City acted outside its scope of authority when it terminated Frazier as its police chief.

In response, the City claims that Frazier's termination bears no causal connection to the lawfulness of Resolution No. 2021-5. The parties agree that the reason the City terminated Frazier's employment was because he refused to serve the resolution and order on the Pattersons. Frazier does not deny that he refused to serve Resolution No. 2021-5 and its accompanying order on the Pattersons. Instead, Frazier's brief focuses solely on explaining why he challenges the lawfulness of Resolution No. 2021-5.

6

The City also argues that it is not within the police chief's authority to determine whether the City had authority to pass a resolution and order. It cites *Michigan v. DeFillippo*, 443 U.S. 31, 38, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979), for the proposition that police officers cannot take it upon themselves to determine which laws are entitled to enforcement. As stated by the *DeFillippo* Court: "Society would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement." 443 U.S. at 38.

The Kansas Supreme Court has ruled that a law enforcement officer is protected from liability for damages when executing a facially valid order. *Kasparek v. Throop*, 98 Kan. 551, 552-53, 158 P. 1114 (1916). Ordinances are to be enforced until and unless they are declared by a court to be invalid. See *DeFillippo*, 443 U.S. at 38 ("Police are charged to enforce laws until and unless they are declared unconstitutional."). As noted by the City, in *Dodson Aviation, Inc. v. Padron*, No. 10-4036-JTM, 2011 WL 1097774, at *6-7 (D. Kan. 2011) (unpublished opinion), the court found that both K.S.A. 19-812 and K.S.A. 60-2602 indicate that a sheriff is without authority to independently analyze a court order and then refuse its enforcement. "Stated simply, sheriffs must execute court orders and do not have authority to determine whether or not to execute a facially valid court order." 2011 WL 1097774, at *6.

Frazier asserts that because the City has ordinances that specifically address dogs, "those ordinances should take precedence over the resolution." He cites no caselaw to support this assertion. As such, he has waived or abandoned his challenge. See *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017) (issue not adequately briefed deemed waived or abandoned; point raised incidentally in brief and not argued deemed abandoned).

*Frazier's argument that the City's termination decision was not based on substantial competent evidence is waived.*

Finally, Frazier argues that the City's decision to terminate his employment as the police chief was not based on substantial evidence. He asserts that the administrative record "is quite thin" and that the city council meetings are not recorded or transcribed. He also asserts that the minutes only present the City's "side of things" and do not contain his statements that he refused to serve the resolution and order because he believed them to be unlawful.

It appears that Frazier is trying to frame a procedural due process claim. But his counsel acknowledged during the district court hearing on his petition that Frazier had no disagreement with the procedure used for his termination. And the City points out, Frazier's due process rights were not violated. He was given notice and an opportunity to be heard regarding his termination. These are the basic elements of procedural due process. *Villa*, 296 Kan. at 331.

Again, Frazier cites no caselaw in support of his assertion regarding the recording, including an argument that failure to transcribe a pretermination hearing violates due process. Thus, he has waived such a challenge. See *Russell*, 306 Kan. at 1089.

We find the City did not act arbitrarily or capriciously, the City did act within its scope of authority, and the City's decision was supported by substantial competent evidence. We therefore affirm the district court's ruling.

Affirmed.